UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>CHIEF JUDGE TIMOTHY C. EVANS, et al.,<br><br>    Defendants. | Case No. 23-cv-14590<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jessica Jackson sues Defendants Chief Judge Timothy Evans, Judge Karen O'Malley, Probate Judge Terrance McGuire, Probate Judge Carolyn Gallagher, Presiding Probate Judge Daniel B. Malone (the "Judicial Defendants"); employees of the Illinois Office of Public Administrator ("OPA"), Louis G. Apostol, Tina Loustroplols, and Leah Jakubowski (the "OPA Defendants"); Attorneys David Feldman and Kevin Kanavy (the "AG Law Defendants"); Heirs Haroletta Yvonne Thomas ("Yvonne") and Harriet Yvette Thomas ("Yvette"); Corporate Counsel Glenn Angel; Circuit Court Clerk Iris Martinez; Attorney Thomas Lienenweber; and Does 1 through 10. Plaintiff's Amended Complaint alleges negligence, judicial retaliation, conversion, civil conspiracy, bankruptcy fraud under the Racketeer Influenced and Corrupted Organizations Act ("RICO"), fraud, civil rights violations, intentional infliction of emotional distress, and violation of the Computer Fraud and Abuse Act; she asserts all claims against all Defendants. Plaintiff's claims arise out of a pending

state probate matter titled, *In the Estate of Mary Thomas*, 2016-P-5729 (the "Probate Case"). [37] at 1. Defendants move to dismiss [37], [38]. For the following reasons, this Court grants Defendants' motions.

I. **Plaintiff's Allegations**

The nine-count Amended Complaint [19] constitutes a list of grievances stemming from the Probate Case, a state probate matter pending in the Cook County Circuit Court Probate Division that began in 2016. [19] at ¶ 2. The Probate Case concerns the estate of Plaintiff's deceased mother, Mary Lou Thomas, who died on July 4, 2016. *Id.* at ¶ 49. Mary named Yvonne, Yvette, and her three daughters, beneficiaries of her estate, and she granted Yvonne medical and financial power of attorney beginning in 2009. *Id.* at ¶¶ 23, 49–51. When Mary died, Yvonne became the executor of her Estate, pursuant to Article Five of Mary's Last Will and Testament. *Id.* at ¶ 64.

On or about August 15, 2016, Yvonne retained Strauss & Malk LLP through Feldman, to handle the Probate Case. *Id.* at Ex. D. Feldman's representation continued when he moved to Aronberg Goldgehn Davis & Garmisa ("AG Law"), where Kanavy is an associate. [37] at 3. On behalf of Yvonne, AG Law filed a Motion to Withdraw as Executor on August 25, 2022. [19], Ex. A. The Probate Court granted that motion on December 20, 2022, [37], Ex. 2, and the AG Law Defendants' involvement in the Probate Case ended that day. [37] at 3. Plaintiff's allegations against Feldman and Kanavy pertain to their representation of Yvonne in the Probate Case.

2

The Amended Complaint remains centered upon allegations that Yvonne, conspiring with the other Defendants, devalued a three-flat property in Chicago, which was part of Mary's Estate, and that the property was forced into public administration, therefore depriving Plaintiff of her share of the property. *See generally* [19]. Plaintiff primarily alleges that Yvonne and her attorneys (Feldman and Kanavy) worked to deprive Plaintiff of her rightful inheritance. *Id.* at ¶ 69. Plaintiff also alleges that the Judicial Defendants conspired with Yvonne to delay and prolong the proceedings and to drive up attorneys' fees. *Id.* at ¶ 68.

Judge O'Malley presided over the Probate Case from September 2016 until April 2019. *Id.* at ¶ 32. Under Judge O'Malley, Plaintiff attempted—unsuccessfully—to have Yvonne terminated as the executor. *Id.* at ¶¶ 135, 176–77. Plaintiff also alleges that Judge O'Malley granted motions to extend time, over her objections, and failed to show up for one court hearing. *Id.* at ¶¶ 154–55, 178. Plaintiff further alleges that Judge O'Malley did not "correct" Defendant Feldman's allegedly false statements made in response to one of Plaintiff's motions. *Id.* at ¶ 166. She also claims Judge O'Malley told her the court had not received certain documents she knew she had filed. *Id.* at ¶¶ 187.

In addition to Judge O'Malley, several other judges handled the proceedings involving Plaintiff. Plaintiff alleges that Judge Malone also briefly oversaw the case, including recusal proceedings, and that the case was then reassigned to Judge McGuire's calendar. *Id.* at ¶¶ 34, 191, 202. Plaintiff alleges that Judges Malone and McGuire heard false statements from Yvonne, Feldman, and Kanavy but failed to

3

discipline the attorneys. *Id.* at ¶ 202. Plaintiff also alleges that Judge McGuire ignored her motions, and that Judge Malone improperly inserted himself in her motion to have Judge McGuire recused from the Probate Case, as well as at other times. *Id.* at ¶¶ 208, 229. Plaintiff alleges that Judge Gallagher also oversaw the Probate Case while Plaintiff's motion to recuse Judge McGuire was pending; that motion ultimately failed. *Id.* at ¶¶ 230–38.

Chief Judge Evans has not overseen any part of the Probate Case and has only ever received complaints related to it from Plaintiff. *Id.* at ¶¶ 188, 211, 223. In September 2018, Plaintiff complained to Chief Judge Evans about Judge O'Malley and the absence of stenographers. *Id.* at ¶ 188. In June 2021, Plaintiff filed a motion requesting a stenographer at a hearing, delivering the motion to Judge McGuire and Chief Judge Evans. *Id.* at ¶ 211. Judge McGuire denied the Motion. *Id.* at ¶ 212. Plaintiff submitted a complaint about Judge McGuire to Chief Judge Evans and Defendant Iris Martinez on February 23, 2022. *Id.* at ¶ 223.

Finally, Plaintiff alleges that, in August 2022, the OPA Defendants became involved with the Probate Case (specifically, participating in hearings and dealing with the administration of the three-flat property), which she claims has delayed the proceedings and remains illegal. *Id.* at ¶¶ 96, 240, 247, 251–61.

Plaintiff's claims lump all Defendants together, asserting each of the nine causes of action, including negligence, judicial retaliation, conversion, civil conspiracy, bankruptcy fraud, fraud, civil rights violation, intentional infliction of emotional distress, and violation of the Computer Fraud and Abuse Act ("CFAA"),

4

against all Defendants, including the 10 Doe Defendants she has never named or served.

## II. Applicable Legal Standards

Defendants move to dismisses under Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3).[1] Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Using Rule 12(b)(1) to review a motion to dismiss, the Court must construe Plaintiff's complaint in the light most favorable to Plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in Plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Furthermore, when analyzing Rule 12(b)(1) motions, the Court may look beyond the complaint to evaluate any evidence that has been brought on this issue to discover if subject matter jurisdiction exists. *Silha*, 807 F.3d at 173 (When reviewing a challenge to subject matter jurisdiction, "the court may look beyond the pleadings and view any evidence submitted"). Under Rule 12(h)(3), if the Court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the action.

---

[1] Defendants filed two separate motions, with Feldman and Kanavy jointly moving to dismiss, [37], and Defendants Chief Judge Timothy C. Evans, Judge Karen O'Malley, Judge Terrance McGuire, Judge Carolyn Gallagher, Judge Daniel B. Malone, Lous B. Apostol, Tina Loustroplols, and Leah Jakubowski filing a separate motion, [38]. Defendants Iris Martinez, Glenn Angel, Tom Leinenweber, and Harriet Yvette Thomas failed to respond to the complaint, but it is not clear that they have been properly served. Defendant Haroletta Yvonne Thomas answered the complaint [27], denying that Plaintiff is entitled to any relief and denying all allegations against her. Although these latter Defendants did not move to dismiss, the Court's findings concerning subject matter jurisdiction apply to all claims against all Defendants.

5

Similarly, analyzing a motion to dismiss under Rule 12(b)(6) requires the Court to construe facts and draw inferences in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). 12(b)(6) motions require the court to only consider the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and must be supported by factual content because "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint should be dismissed if the plaintiff does not allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 678 (2009).

Furthermore, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (quoting *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)). Any "claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading

6

requirements." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

## III. Analysis

The Court finds Defendants' motions to dismiss well-taken for three reasons. First, because Plaintiff's claims arise out of and remain intertwined with the Probate Case, her claims are barred under *Rooker-Feldman*. Next, the Judicial Defendants and the OPA Defendants remain absolutely immune from the claims Plaintiff brings against them. Finally, Plaintiff's nine claims all fail to state a plausible claim for relief. Because Defendants' *Rooker-Feldman* argument implicates this Court's subject matter jurisdiction, the Court turns first to this issue. *See, e.g., Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 764 (7th Cir. 2024) (Because *Rooker-Feldman* "operates as a jurisdictional bar," the court must first consider whether subject-matter jurisdiction exists, before reviewing the merits of any claim.); *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) ("We are required to consider subject-matter jurisdiction as the first question in every case, and we must dismiss this suit if such jurisdiction is lacking.") (quoting *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014)).

### A. The *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine bars all of Plaintiff's claims because they are either based upon the state court's judgments made in the Probate Case or inextricably linked to them. [37], [38]. This Court agrees.

7

The *Rooker-Feldman* doctrine comes from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and holds that no federal court other than the United States Supreme Court "may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). Therefore, the *Rooker-Feldman* doctrine applies when the state court's judgment functions as the injury claimed in federal court. *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 293 (2005); *GASH Assocs. v. Rosemont*, 995 F.2d 726, 729 (7th Cir. 1993)). The doctrine applies to claims that were raised before the state court and to claims that are "inextricably intertwined with state court determinations." *Kelley v. Med-1 Sols.,* LLC, 548 F.3d 600, 603 (7th Cir. 2008) (citing *Feldman*, 460 U.S. at 482 n.16).

In determining whether federal claims are "inextricably intertwined" with a state court judgment, "the crucial point is whether the district court is in essence being called upon to review the state-court decision." *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004) (internal quotations omitted). For the *Rooker-Feldman* doctrine to bar a claim, it must be effectively impossible to separate Plaintiff's claimed injury from the state court judgment. *Jakupovic*, 850 F.3d at 903. If the claim remains inextricably intertwined, the Court must then determine whether Plaintiff had a reasonable opportunity to raise the issue in state court proceedings; if she did, *Rooker-Feldman* bars the federal claim. *Id.*; *see also Kelley*, 548 F.3d at 605.

Here, Plaintiff's claims fall within these parameters. In each case, Plaintiff either raised the claim in state court, or the claim remains inextricably linked with

8

the state court's judgements in the Probate Case. Plaintiff's claims challenge adverse rulings made in the Probate Case. Plaintiff claims the various Defendants are a part of a broad conspiracy to "illegally put the estate into Public Administration" and to "create financial hardship on the estate to get the real estate in the hands of Cook County…" [19] at ¶¶ 5–6.

*Mains v. Cititbank, N.A.,* 852 F.3d 669 (7th Cir. 2017) remains instructive. In that case, a homeowner lost a foreclosure action in state court and then filed a 90-page complaint in federal court naming various defendants involved in the state case, including the mortgage holder, which initiated the foreclosure action, and alleging widespread fraud and violations of federal statutes, including RICO. *Id.* at 674–75. The Seventh Circuit held that the plaintiff's claims, which mainly pertained to the defendant's alleged fraud concerning the mortgage, remained precluded under *Rooker-Feldman. Id.* at 676. Significantly, in the court's view, granting the plaintiff the relief he sought would have essentially required the court to overturn the state court's foreclosure judgement. *Id.* So too here.

Plaintiff's claims effectively seek to overturn unfavorable rulings and judgments rendered in the Probate Case. The only way this Court could redress alleged fraud, negligence, and other misconduct in the Probate Case would be to overturn the Probate Court's judgment—precisely what *Rooker-Feldman* precludes. *E.g., Mains,* 852 F.3d at 676.[2] As a result, the Court dismisses Plaintiff's claims for lack of subject matter jurisdiction.

---

[2] To the extent Plaintiff seeks relief relating to matters still pending in the Probate Case, then the Court would instead abstain from hearing those claims under *Younger v. Harris*, 470 U.S. 37 (1971).

9

B.  **Defendants' Immunity from Suit**

Even if subject matter jurisdiction existed here, the Court would still dismiss Plaintiff's claims against the Judicial Defendants and the OPA Defendants because they are immune from suit. The Judicial Defendants—Chief Judge Timothy Evans, Judge Karen O'Malley, Probate Judge Terrance McGuire, Probate Judge Carolyn Gallagher, and Presiding Probate Judge Daniel B. Malone—argue that they are entitled to absolute judicial immunity because they are being sued for actions taken within the scope of their employment. [39] at 12. The OPA Defendants—Louis G. Apostol, Tina Loustroplols, and Leah Jakubowski—argue that they are entitled to government attorney immunity. And both sets of Defendants claim they are entitled to sovereign immunity based upon the Illinois State Lawsuit Sovereign Immunity Act.

Judicial immunity "confers complete immunity from suit, not just a mere defense to liability," and applies to suits brought through 42 U.S.C.S. § 1983. *Dawson v. Newman*, 419 F.3d 656, at 660 (7th Cir. 2005). Judges cannot be sued for their judicial acts, even when such acts exceed the scope of their jurisdiction and are "alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. 335,

---

*Younger* abstention applies when a parallel, pending state case proceeding remains ongoing and the requested federal relief would "implicate a State's interest in enforcing the orders and judgments of its courts." *Spring Comm. Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). [39] at 9. *Younger* abstention applies in three categories of cases: "where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013)). Here, federal abstention remains appropriate for ongoing probate proceedings because exercising federal jurisdiction over these claims would reflect a lack of respect for the state's ability to resolve matters properly before its courts. *J.B.*, 997 F.3d at 722 (quoting *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 679 (7th Cir. 2010)).

351 (1871). Absolute immunity may not apply to entirely nonjudicial actions taken by judges; nor are judges immune from suit relating to actions, "taken in the complete absence of all jurisdiction." *E.g.*, *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Here, the allegations relating to the Judicial Defendants all stem from actions they took in the exercise of their professional duties as judges. For example, Plaintiff alleges that Judge O'Malley did not "correct" Defendant Feldman's allegedly false statements made in response to one of her motions, [19] at ¶ 166; she alleges that Judges Malone and McGuire heard false statements from Yvonne, Feldman, and Kanavy, but failed to discipline those individuals, *Id.* at ¶ 202; and she alleges that Judge Malone was wrongly involved when she filed a motion to have Judge McGuire recused from the Probate Case and at other times, *id.* at ¶ 229. Defendants are immune from suit stemming from such actions.

Similarly, Attorneys appearing on behalf of the government are also entitled to absolute immunity: the Supreme Court has extended the common law rules granting participants in judicial proceedings absolute immunity from civil liability to federal legislation, and attorneys appearing on behalf of the government are included in this extension. *Auriemma v. Montgomery*, 860 F.2d 273, 275–76 (7th Cir. 1988). The OPA Defendants are thus also entitled to immunity for the actions they took with respect to the Probate Case, upon which Plaintiff's claims rest. *See* [19] at ¶¶ 96, 239, 242–47, 251–261.[3]

---

[3] Plaintiff's claims against state employee defendants are also barred by sovereign immunity, which applies when a plaintiff sues a State employee for actions taken within their scope of employment. The Illinois State Lawsuit Sovereign Immunity Act, 745 ILCS 5/1 *et seq.*, provides that the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act, 705 Ill. Comp.

### C. Failure to State a Claim

Finally, even if Plaintiff's claims survived jurisdictional and immunity challenges, the Court would still dismiss them under Rule 12(b)(6). To state a claim for relief, a plaintiff's allegations must raise a reasonable expectation that the discovery process will reveal relevant evidence to support the claim; she must allege facts to show that her claim is plausible, not merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 559 (2007). A claim is plausible when the facts pled allow the factfinder to draw the reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts the claimant pleads must be more than "merely consistent" with the claim. *Id.* Plaintiff's claims fall short of these standards.

#### 1. Negligence (Count 1)

To state a claim for negligence, Plaintiff must allege "duty, breach, foreseeability, and causation." *Green v. CSX Transp., Inc.,* 414 F.3d 758, 766 (7th Cir. 2005). Yet she does not allege the existence of any duty owed to her by Defendants; nor does she allege anything that would resemble breach, foreseeability, or causation. She does not allege facts as to any Defendant consistent with these elements. As a result, her negligence claim would fail under Rule 12(b)(6).

---

Stat. 505/8 (and other statutes not relevant here). *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). "State rules of immunity are binding in federal court with respect to state causes of action." *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) (quoting *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991)). Because Plaintiff's claims against the State Defendants, including the Judicial and the OPA Defendants, remain based upon those Defendants' duties as employees of the State of Illinois, and thus are precluded.

12

### 2. Judicial Retaliation (Count 2)

"Judicial Retaliation" is not a cognizable claim. And, even if it were, Plaintiff has alleged no facts to support a retaliation claim; nor has she explained how non-judicial Defendants could ever be liable for such a cause of action.

### 3. Conversion (Count 3)

To state a claim of conversion, a plaintiff must allege: (1) a right to the property at issue; (2) an absolute and unconditional right to the immediate possession of the property; (3) that she made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Stevens v. Interactive Fin. Adv. Inc.*, 830 F.3d 735, 738 (7th Cir. 2016). This claim appears to relate to the three-flat property; yet Plaintiff does not allege that she has an absolute and unconditional right to the property or to the immediate possession of the property; rather, she alleges that the property was devalued by the delays and conduct in the Probate Case. Nor does Plaintiff allege that Defendants assumed control over the property.

### 4. Civil Conspiracy, Fraud, RICO (Counts 4, 5, 6)

To state a RICO claim, a plaintiff must allege that the defendants conducted an enterprise through a pattern of racketeering activity. *United States v. Shamah*, 624 F.3d 449, 454 (7th Cir. 2010). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff describes the alleged enterprise as "collective acts" by the Defendants to help

13

Yvonne evade liability and as an "aggressive real estate grab by Cook County." [19] ¶¶ 300–01. But lumping Defendants together with conclusory allegations remains insufficient to establish an enterprise under RICO. Nor does Plaintiff allege facts to suggest a pattern. A pattern is proven by showing continuity and a relationship, *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989), and Plaintiff does not allege facts suggesting either. Her claims fail under even Rule 8's more lenient standard and fall far short under Rule 9(b)'s heightened pleading requirements; she does not allege the who, what, where, when, or how as to any of these claims. As a result, the claim remains subject to dismissal under Rule 12(b)(6). *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 441–42 (7th Cir. 2011) ("Under Rule 9(b) of the Federal Rules of Civil Procedure, a party who alleges fraud or mistake must state with particularity the circumstances constituting fraud or mistake"; she must, in other words, ordinarily describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story.").

### 5.     Civil Rights Violation (Count 7)

Plaintiff's claim here comes a bit out of left field: she alleges a civil rights violation based upon the "aggressive plan of gentrification on the South Side of Chicago." [19] ¶ 311. Plaintiff fails to plead facts tying any named Defendant to the alleged plan; nor does she allege facts to tie the plan to any violation of her rights.

14

### 6. Intentional Infliction of Emotional Distress (Count 8)

To state an intentional infliction of emotional distress claim under Illinois law, a claimant must allege that the conduct in question was truly extreme and outrageous; that the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress; and that the conduct in fact caused severe emotional distress. *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024) (citing *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016)). Liability exists only when the alleged conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). Plaintiff here does not allege any act on the part of any Defendant that could be characterized as extreme or outrageous; nor does she allege facts tending to suggest an intent on the part of any Defendant to cause her severe emotional distress.

### 7. Computer Fraud and Abuse Act (Count 9)

A person violates the Computer Fraud and Abuse Act, a criminal statute, if he, among other things, knowingly accesses a computer without authorization (or in excess of his authorized access) or intentionally accesses a protected computer without authorization. *See* 18 U.S.C. § 1030(a). To the extent the Act creates a private right of action, Plaintiff fails to allege facts consistent with the elements of any violation. Plaintiff alleges that the Defendants misused the court's computer system to violate the probate process, used incorrect email information, and filed false

15

and fraudulent documents into court records. [19] ¶¶ 319–20. She does not allege that any Defendant accessed any computer system without consent or authorization. Nor does she allege any facts to support a violation of the Act by any named Defendant.

## IV. Conclusion

For the reasons explained above, this Court grants Defendants' motion to dismiss [37], [38] and dismisses Plaintiffs' claims for lack of subject matter jurisdiction under *Rooker-Feldman*. The Court notes that, even if subject matter jurisdiction did exist here, dismissal would still be appropriate as to the Judicial and OPA Defendants, given their immunity from suit, and as to all of Plaintiff's claims under Rule 12(b)(6). Because the Court dismisses for lack of jurisdiction, the dismissal is without prejudice to Plaintiff pursuing relief in state court, if a good-faith basis exists to do so.

Dated: September 20, 2024  Entered:

_____
John Robert Blakey
United States District Judge